# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAY 17 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. **19MJ2081**
black and silver GPS Tracking Device with )
Barcode number 864180035635189 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Controlled Substances; |
| 21 U.S.C. § 963 | Conspiracy to Import Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT

☐ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Kimberly M. Hesse
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/17/19

*Judge's signature*

City and state: San Diego, CA    Honorable Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property is to be searched is the black and silver GPS Tracking Device, with Barcode number 864180035635189, that was found in the center-console area of the 2014 white Honda Accord bearing California license plate 7GNS847 that Gilberto GONZALEZ drove into the United States on March 6, 2018 (the "**Target Device**"). The **Target Device** is pictured here:

 

The **Target Device** is currently in the possession of Homeland Security Investigations, which is located at 2255 Niels Bohr Court, San Diego, CA 92154, within the Southern District of California.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in **Attachment A** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below, between the dates of December 6, 2017 and March 6, 2018. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be location data and identifying information of individuals accessing the device, including telephone numbers and identifying information for phones and/or computers remotely accessing the device:

   a. tending to indicate efforts to import heroin, methamphetamine, cocaine, or some other controlled substances from Mexico into the United States;

   b. tending to identify coconspirators, criminal associates, or others involved in importation of heroin, methamphetamine, cocaine, or some other controlled substances from Mexico into the United States;

   c. tending to identify travel to or presence at locations involved in the importation of heroin, methamphetamine, cocaine, or some other controlled substances from Mexico into the United States; and/or

   d. tending to identify the user of, or persons with control over or access to, the **Target Device**;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Kimberly M. Hesse, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search a Black and Silver GPS Tracking Device, with Barcode number 864180035635189, as further described in Attachment A (the "**Target Device**"), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960 and 963, as more particularly described in Attachment B. This search supports an investigation and prosecution of Gilberto GONZALEZ ("GONZALEZ"), who is charged with committing one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was found in the center-console area of the 2014 white Honda Accord that Gilberto GONZALEZ drove into the United States on March 6, 2018 and that was found to contain heroin, methamphetamine, and cocaine. The **Target Device** is currently in the possession of Homeland Security Investigations, 2255 Niels Bohr Court, San Diego, CA 92154, within the Southern District of California.

3. Based on the information below, there is probable cause to believe that a search of **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

///
///

## EXPERIENCE AND TRAINING

5. I am currently employed with the United States Department of Homeland Security, as a Special Agent for Homeland Security Investigations. I have held my current position with HSI since September 2016. I am a graduate of the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Center. During the course of my training at FLETC, I learned the fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence, all in relation to violations of the United States Code.

6. Prior to joining HSI, I was employed as an Assistant Prosecuting Attorney in both Detroit and Lansing, Michigan, for seven years. During my tenure as a prosecutor, I conducted numerous felony jury trials, including but not limited to narcotics trafficking, firearms offenses, and homicides.

7. Currently, I am assigned to an HSI Narcotics Group in San Ysidro, California. My duties include the investigation of narcotics-related violations of Title 21 of the United States Code, and violations of the California Health and Safety Code. I primarily investigate violations of the United States Code that stem from the international border between Mexico and the United States, including drug smuggling.

8. I have participated in investigating various drug-trafficking organizations that are involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. I have spoken with other agents who have extensive experience in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

9. As a Special Agent with HSI and throughout my tenure as a prosecutor, I have participated in and conducted investigations of violations of various State and Federal

criminal laws, including distribution of controlled substances, use of communication facilities to commit narcotic offenses, importation of controlled substances, and conspiracy to import, possess and distribute controlled substances. These investigations have resulted in arrests and prosecutions of individuals who have imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and methamphetamine. Through these investigations, prosecutions and training; I am familiar with the operations of illegal international DTO in various parts of the world, including Mexico.

10. By virtue of my employment as a Special Agent with HSI, I have performed various tasks and training, which include, but are not limited to:

    a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

    b. Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances; and

    c. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics.

11. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers and traffickers will use GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    b. Drug smugglers and traffickers and their coconspirators will use GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    c. Drug smugglers and traffickers will use GPS devices to direct drivers to

3

1  synchronize an exact drop off and/or pick up time of their illegal cargo;

2  12.  Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data on GSM cellular devices. Depending on the device, such data can include user identity, location, phone numbers, network authorization data, personal security keys, and IP addresses. Much of the evidence generated by a smuggler's use of a GPS tracker would likely be stored on any SIM Card that has been utilized in connection with that device.

13.  Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that GPS devices can and often do contain electronic records, including location data and telephone numbers or identifying information for individuals accessing GPS Devices directly or remotely through phones and/or computers. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS device. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of GPS devices sometimes yields evidence:

   a. tending to indicate efforts to import controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

   b. tending to identify coconspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

   c. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or

4

        delivery points; and/or

        d. tending to identify the user of, or persons with control over or access to, the GPS device.

14. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months. This planning sometimes includes the use of GPS devices.

## FACTS SUPPORTING PROBABLE CAUSE

### A. Facts Leading to Seizure of the Accord and GONZALEZ's Arrest

15. According to the report of CBP Officer R. Gonzalez, on March 6, 2018 at approximately 7:00 a.m., Gilberto GONZALEZ, a United States Citizen, entered the United States from Mexico by driving into the Otay Mesa, California, Port of Entry. GONZALEZ was the driver, sole occupant, and registered owner of a 2014 white Honda Accord bearing California license plate 7GNS847. GONZALEZ presented Officer Gonzalez with his SENTRI card, gave two negative customs declarations, and said he was driving to San Diego. Officer Gonzalez received a computer-generated alert and referred GONZALEZ and the Accord to secondary inspection.

16. According to the report of CBP Officer I. Perez, at about 7:06 a.m., Officer Perez screened the Accord using the "Z-Portal" X-Ray machine, and saw anomalies within the rear driver-side quarter panel, the rear passenger-side quarter panel, and the backseat, backrest area.

17. According to the report of CBP Officer E. Franco, at about 7:10 a.m., Officer Franco and his assigned K-9 Unit screened the outside of the Accord, and the K-9 alerted on the rear passenger-side quarter panel. Officer Franco alerted Officer Perez, and the Accord was referred to the secondary vehicle lot for further inspection.

18. According to the report of CBP Officer Nguyen, at about 7:20 a.m., Officer Nguyen conducted a seven-point inspection of the Accord. Officer Nguyen found nine

5

packages in the right rear quarter panel, six packages in the left rear quarter panel, two packages on the left side back-seat, two packages in the right side rear back-seat, five packages in the right backrest area of the back-seat, and three packages in the left backrest area of the back-seat. In total, Officer Nguyen found twenty-seven packages in the Accord.

19. Officer Nguyen tested the packages and found as follows: six blue packages weighing 7.74 kilograms (17.06 pounds) field-tested positive for the characteristics of heroin, ten packages weighing 12.16 kilograms (26.80 pounds) field-tested positive for the characteristics of cocaine, and eleven packages weighing 5.74 kilograms (12.65 pounds) field-tested positive for the characteristics of methamphetamine. Subsequent testing by the DEA has confirmed that these substances are in fact heroin, cocaine, and methamphetamine.

**B. Discovery of the Target Device**

20. At the time the drugs were discovered, the Accord was seized by CBP and transferred to a secure lot for storage. The lot, American Towing, is located at 140 Reed Court Chula Vista, CA 91911, and is used by CBP and HSI to store vehicles that are found to contain drugs when entering the United States at Ports of Entry. Per a manager at American Towing, I understand that the lot is secured pursuant to standards set by Government agencies. I am also aware that the lot cannot be accessed unless the visitor shows some proof of identity at the front office and signs in, and that all visitors are escorted by staff while viewing a vehicle in the lot's possession. Upon leaving, visitors must also sign out. I also understand that American Towing has not had any history of break-ins or thefts in at least twenty years.

21. On May 8, 2019, I observed a vehicle viewing of the Accord at American Towing. The viewing was attended by a defense investigator working with counsel for GONZALEZ, the assigned Assistant U.S. Attorney, and an automotive expert retained by the Government.

22. At the time the viewing began, the doors to the Accord were locked. The automotive expert had to get the key from an employee of American Towing, who was

6

1 generally supervising the lot.

2     23. During his review of the Accord, the automotive expert found the **Target Device** hidden inside the car. The **Target Device** was wired into the center-console area of the Accord, and was placed behind the center console. The **Target Device** was also attached to a microphone. While CBP Officers had searched the Accord for drugs in March 2018, they did not search the area where the **Target Device** was found (because there were no indications of anomalies there). From my observation of the automotive expert's work, I believe the **Target Device** was first discovered at this viewing. At the time the **Target Device** was discovered, I seized it as evidence and gave the defense investigator an opportunity to view it.

    24. Given that the Accord was taken to American Towing from the Port of Entry; that the lot is secured; that the Accord was stored at the lot; that the Accord was locked when the viewing began; that visitors to the lot must be escorted; and that the **Target Device** was found for the first time in a hidden area of the Accord, wired into it, I submit that the **Target Device** was in the Accord at the time GONZALEZ entered the United States on March 6, 2018.

### C. Training and Experience About GPS Devices

    25. Based upon my experience and investigation in this case, I believe that GONZALEZ, as well as other persons as yet unknown, were involved in the importation of narcotics. Based upon my experience and training, and in consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I also believe GONZALEZ and others used the **Target Device** to coordinate with co-conspirators regarding the importation and delivery of the controlled substances, and to otherwise further the conspiracy both inside and outside the United States. There is also probable cause to believe that electronic records, including location data and telephone numbers or identifying information for individuals accessing the **Target Device** directly or remotely through phones and/or computers are stored in the memory of the **Target Device**, which may identify other persons involved in drug-

7

trafficking activities.

26. I know that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as GONZALEZ will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Given those facts, I respectfully request permission to search the **Target Device** for items listed in Attachment B beginning on December 6, 2017, up to and including the entire day of March 6, 2018.

## METHODOLOGY

27. It is not possible to determine, merely by knowing a GPS device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. GPS devices today can have functions such as full address books and can be mini-computers. An increasing number of GPS devices now allow users to access them remotely with computers or with a cellular phone and remotely erase all of the data contained on the device. For that reason, the device may only be powered in a secure environment. Many GPS devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS device models using forensic hardware and software. This process is time and labor intensive and may take weeks or longer.

28. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

8

29. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## CONCLUSION

30. Based upon my experience, training, and consultation with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe there is probable cause to conclude that the **Target Device** was used to facilitate the offense of importation of controlled substances. The **Target Device** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of 21 U.S.C. §§ 952, 960, and 963.

31. Because **Target Device** was seized immediately inside the vehicle during the investigation of GONZALEZ's smuggling activities and has been securely stored, there is also probable cause to believe that evidence of the illegal activities committed by GONZALEZ, as described in Attachment B, continues to exist on the **Target Device**.

///
///
///

32. Therefore, I respectfully request that the Court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Kimberly Hesse
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 17th day of May, 2019.

The Honorable Michael S. Berg
United States Magistrate Judge